In the Matter of the Arbitration Between LUTHER DAMON GADD, GERALDINE PUTMAN CLARK, PUTMAN DAMON CLARK, SEFTON ROBINSON CLARK, RICHARD COLGATE DAMON, CYRIL FRANCIS DAMON, JR., and GORDON HAPPER DAMON, Petitioners-Appellees, Cross-Appellants, and ROY CECIL KELLEY, ESTELLE LOUISE KELLEY, CINERAMA INC., and CINERAMA HAWAII HOTELS, INC., Respondents-Appellants, Cross-Appellees

NOS. 8388 and 8446

(S. P. NO. 5273)

JUNE 16, 1983

LUM, C.J., NAKAMURA AND HAYASHI, JJ.,
CIRCUIT JUDGE VITOUSEK, ASSIGNED IN PLACE OF
PADGETT, J., DISQUALIFIED, AND CIRCUIT JUDGE HUDDY,
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LUM, C.J.

This appeal and cross-appeal present several issues concerning the circuit court's order compelling arbitration pursuant to an arbitration clause in the parties' lease agreement and subsequent order confirming the resulting arbitration award. With regard to the issues presented by respondents' appeal, we affirm. Upon careful review of the record, we conclude that the court had jurisdiction to compel arbitration by reappointing previously selected arbitrators to serve on the arbitration panel and its findings in support of its order confirming the arbitration award cannot be set aside as clearly erroneous. As for the issues presented by petitioners' cross-appeal, we reverse and remand the case for further proceedings insofar as we find that petitioners are entitled to reasonable attorneys' fees under the lease agreement and are also entitled to pre-judgment and post-judgment interest at the rates claimed.

I.

In a written lease agreement dated April 1, 1953, lessor Daphne Mills Damon agreed to lease a certain parcel of land

situated in Waikiki to lessees Roy Cecil Kelley and Estelle Louise Kelley. The lease agreement established the amount of rental payments for the first twenty-five years of the fifty-five-year lease and provided that the rental payments for the remaining thirty years of the lease would be redetermined every ten years by written agreement, within sixty days prior to the expiration of the term. The lease also provided that if the parties failed to agree on the amount of annual payment, the following provisions would apply:

In the event of the failure of the Lessor and Lessees to agree on the rent for and during any of the aforesaid 10-year periods in which the rent is subject to redetermination, then the annual rental payable for such period shall be the sum determined to be the reasonable rental value of the land only exclusive of improvements based upon the prevailing rate of return at the time of such determination, but in no event shall the rent for any year during such periods be less than $36,000 per annum net.

The valuation of the land, exclusive of improvements, shall be determined by appraisal as follows:

*Arbitration.* The Lessor and Lessees, within ten (10) days after their failure to agree upon the rent to be paid for any 10-year period after the expiration of the first twenty-five (25) years of said term, shall each appoint an appraiser and the two appointed shall appoint a third. In the event of failure of either the Lessor or the Lessees to appoint an appraiser, the appraiser appointed by the other shall appoint a second, and the two thus appointed shall appoint a third. The valuation of the land demised, exclusive of improvements as fixed by the appraisers or a majority of them, shall be conclusive and binding upon the parties hereto as the basis for fixing the rental to be paid by the Lessees during the 10-year period of said term. The cost of such appraisal shall be borne equally by the Lessor and Lessees.

The lessor's title and interest in the lease was subsequently transferred to petitioners Luther Damon Gadd, Geraldine Putman Clark, Richard Colgate Damon, Cyril Francis Damon, Jr., and Gordon Happer Damon. On March 29, 1979, the lessees' interest in the lease was assigned to respondent Cine-

rama, Inc. On January 15, 1970, the lessors consented to the lessees' assignment of the lease and in addition established certain rental payments for the years 1970 to 1979. The agreement stated that thereafter,

> 3. Rent for the periods subsequent to December 31, 1979 shall be in such amounts as shall be negotiated or arbitrated. Said negotiation or arbitration shall be entered into in accordance with the provisions of said Lease for the ten year period commencing April 1, 1978 and ending March 31, 1988, except that rent for the portion of said ten year period to December 31, 1979 shall be as provided herein.

In August of 1979, after the lessees and lessors had failed to agree on annual rental payments for the period from January 1, 1980 to March 31, 1988, the parties commenced arbitration proceedings. In accordance with the arbitration clause in the 1953 lease, the lessors selected Don R. Cowell and the lessees selected Robert C. Hastings, Jr. as members of the arbitration panel. Cowell and Hastings then selected Raymond A. Lesher as the third member of the panel.

The panel met several times and reached a tentative agreement on July 9, 1979, which established "a value of $160 per square foot, a total parcel value of $9,000,000, an annual lease rate of eight percent, and an annual rental of $720,000" for the relevant lease period. Before the arbitration report had been distributed for signatures, however, the lessees sought to terminate the arbitration process and Dr. Richard Kelley, son of lessee Roy Cecil Kelley, instructed the lessees' appointee Hastings to "pull the report."

On July 14, 1980, Lesher resigned from the panel in frustration, although he later sought to rescind his resignation. On or about that same date, Hastings was fired by the lessees. The lessees then attempted to replace Hastings by appointing Larry Medeiros to the panel. No meetings between Medeiros and the other members of the original panel were ever held, however.

On September 11, 1980, petitioners Luther Damon Gadd, Geraldine Putman Clark, Richard Colgate Damon, Cyril Francis Damon, Jr., Gordon Happer Damon, Putman Damon Clark, and Sefton Robinson Clark (hereinafter referred to as "petitioners" or "lessors") filed a petition for order compelling

arbitration and petition for order appointing arbitrators.[1] By order entered on October 10, 1980, the trial court reappointed Lesher and Hastings to the arbitration panel. The court ordered the panel comprised of its original members, namely, Hastings, Lesher, and Cowell, to complete the arbitration process pursuant to the arbitration clause in the 1953 lease and to reduce their final decision to writing as soon as possible. Respondents Roy Cecil Kelley, Estelle Louise Kelley, Cinerama, Inc., and Cinerama Hawaii Hotels, Inc. (hereinafter referred to as "respondents" or "lessees") then filed a motion for an order to appeal the October 10, 1980 order compelling arbitration, which the trial court denied.

The original arbitration panel comprised of Hastings, Lesher and Cowell conducted further meetings and hearings, following the circuit court's order compelling arbitration. The arbitration panel issued a final arbitration award on February 9, 1981 which established "[t]he fair annual rental for the 8 year, 3 month period January 1, 1980 to and including March 31, 1988 for the 56,867 square foot demised premises [as] $720,000 (8% of $9,000,000)." The essential terms of the final arbitration award were identical to the terms of the tentative agreement of the arbitration panel on July 9, 1980.

After the arbitration panel had submitted its final award, petitioners filed a motion to confirm the arbitration award and respondents filed a motion for an order to stay confirmation and enforcement of the arbitration award and a motion to vacate the arbitration award. On July 13, 1981, the court filed its findings of fact and conclusions of law and by order and judgment entered on the same date, confirmed the arbitration award establishing a rental payment for the parcel of land at issue at $720,000 per annum. The order and judgment also awarded petitioners post-judgment interest at 8% per annum and directed that each party bear its own legal expenses and costs incurred to date.

---

[1] The petition for order compelling arbitration and appointing arbitrators named Putman Damon Clark and Sefton Robinson Clark as petitioners by reason of their status as "recipients of gifts" which made them present owners of interests in the parcel of land at issue.

Respondents and petitioners allege numerous points of error in their respective appeal and cross-appeal from the orders entered by the lower court. We address each of these issues except those clearly without merit.

## II.

At the outset we note, as we have before on numerous occasions, that " the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Gregg Kendall & Associates, Inc. v. Kauhi,* 53 Haw. 88, 93, 488 P.2d 136, 141 (1971). *Accord, University of Hawaii Professional Assembly ex rel. Daeufer v. University of Hawaii,* 66 Haw. 214, 223, 659 P.2d 720, 726 (1983); *Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. 483, 488, 605 P.2d 925, 928 (1980); *Leeward Bus Co. v. City and County of Honolulu,* 58 Haw. 64, 71, 564 P.2d 445, 449 (1977). To that end, the circuit court has the authority under HRS § 658-3 to compel arbitration upon application by one of the parties aggrieved by the failure of another to comply with the terms of the arbitration agreement. The relevant provisions of HRS § 658-3 (1976) are as follows:

Compelling compliance with agreement; jury trial when. A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' notice in writing of the application shall be served upon the party in default. Service thereof shall be made in the manner provided for service of a summons. The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.

Respondents' initial contention on appeal is that the lower court was without jurisdiction in this case to compel arbitra-

tion under HRS § 658-3. Upon review of the record, however, it is clear that the lessors' petition to compel arbitration met all the requirements set in HRS § 658-3 for assumption of jurisdiction by the circuit court. HRS § 658-3 requires (1) that the court must be satisfied that a written agreement to arbitrate exists *or* that the failure to comply with the agreement is not in issue and (2) that the party petitioning for an order compelling compliance with the agreement must be aggrieved by the failure, neglect or refusal of another party to perform under the agreement. Both elements were easily satisfied in the instant case.

The existence of a valid written arbitration agreement governing the amount of rental payments was never at issue. The 1953 lease provided for the submission of rental disputes to an arbitration panel and the parties agreed that the majority decision of the panel "shall be conclusive and binding upon the parties hereto as the basis for fixing the rental to be paid by the Lessees during the 10-year period of said term." The arbitration clause constitutes an enforceable agreement under HRS § 658-1 (1976) which provides that

> Agreement to submit. A provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract or the refusal to perform the whole or any part thereof, or an agreement in writing to submit an existing controversy to arbitration pursuant to section 658-2, shall be valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.

Indeed, because of the existence of the valid and binding arbitration clause in the 1953 lease, the respondents in their memorandum in opposition to the lessors' petition conceded that the statutory provisions regarding arbitration in chapter 658 of the Hawaii Revised Statutes would govern the trial court's intervention in the arbitration process.

The fact that the petitioners were an aggrieved party under HRS § 658-3 also cannot be seriously disputed. The respondents' disruption of the arbitration process by firing their appointed appraiser on the eve of the arbitration panel's submission of its decision constituted a willful refusal to abide by the terms of the arbitration clause in the 1953 lease. The

respondents' actions were clearly intended to circumvent the arbitration agreement by preventing the tentative decision from becoming conclusive and binding. The unilateral dismissal of an incumbent arbitrator during the arbitration process deprived petitioners of a speedy resolution of their dispute in accordance with the terms of their arbitration agreement.

A similar deterioration in the arbitration process occurred in *Leeward Bus Co. Ltd. v. City and County of Honolulu, supra*. The arbitration agreement in that case provided that each party would select a representative who in turn would select a sole arbitrator. Each party eventually selected a representative, as dictated by the agreement, but the representatives were unable to agree on the name of the arbitrator because one representative sought to withdraw a candidate's name from consideration after the other representative had agreed to the candidate's selection. Condemning the unilateral withdrawal of the candidate's name, we declared that

> [W]here, as in this case the parties basically provide the authority to make the selection and a time limit within which the selection must be made, predictability is not assured if the caprice of the parties controls the selection process. . . . Where the agreement to arbitrate does not specifically provide terms for the withdrawal of names during the selection process the legislative policy to encourage arbitration leads us to hold that a party submitting a name to the other cannot unilaterally withdraw the name within the time provided for the selection.

*Id.* at 71, 564 P.2d at 449.

The respondents' firing of their appointee after learning of the panel's tentative decision was far more egregious than the representative's attempted withdrawal of a candidate's name during the selection process in *Leeward Bus*. Given the proclaimed legislative policy to encourage arbitration, the respondents' dismissal of an arbitrator after the arbitration process was almost completed cannot be condoned. Under these circumstances, the court acted within its jurisdiction in granting lessors' petition to compel arbitration.

III.

Respondents next contend that even if the court had jurisdiction to compel arbitration, it exceeded its powers in reappointing Hastings and Lesher to the arbitration panel. According to respondents, the reappointment of these arbitrators deprived respondents of their right to appoint a representative of their own choosing. Respondents argue that the court was forced to recognize respondents' appointment of Medeiros to the panel and was precluded from reconvening the original panel by virtue of Hastings' dismissal by respondents and Lesher's resignation from the panel.

The applicable statutory provision governing the appointment of arbitrators is HRS § 658-4 which states:

Naming arbitrators. If, in the agreement, provision is made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed. If no method is provided therein, or if a method is provided and any party thereto fails to avail himself of the method, or for any other reason there is a lapse in the naming of an arbitrator or arbitrators, or umpire, or in filling a vacancy, then, upon application by either party to the controversy, the circuit court shall designate and appoint an arbitrator or arbitrators, or umpire, as the case may require, who shall act under the agreement with the same force and effect as if he or they had been specifically named therein. Unless otherwise provided, the arbitration shall be by a single arbitrator.

The provisions of HRS § 658-4 would most commonly apply in situations where an arbitrator has not yet been appointed. But the language of the statute is broad enough to also apply in those rare occasions, such as this one, where a party attempts to circumvent the arbitration process by firing an arbitrator in the midst of arbitration proceedings.

The circuit court has the responsibility under the first sentence of the statute to see that the method of naming arbitrators as provided for in the arbitration agreement is followed. Under the second sentence of the statute, the court has the authority to appoint an arbitrator in cases where an agreed method for choosing an arbitrator exists but a party "fails to

avail himself of the method, or for any other reason there is a lapse in the naming of an arbitrator or arbitrators, or umpire, or in filling a vacancy."

The parties here had followed the prescribed method in the arbitration agreement for selecting the original arbitration panel. Respondents' untimely removal of Hastings and disruption of the arbitration process which precipitated Lesher's resignation had created vacancies on the panel. By reinstating the original panel members, the court was in effect following the agreement's prescribed method of naming arbitrators. *Cf. Leeward Bus Co., supra* (trial court held to have exceeded its authority in ordering an altogether different arbitration method from the one prescribed by the arbitration agreement). The court here merely appointed arbitrators who had indicated their continued desire to serve on the panel and who had either directly or indirectly been chosen by the parties themselves.

Respondents cannot in good faith complain that the trial court's reappointment of the arbitrators violated their right to have an arbitrator of their own choosing on the panel. The arbitration agreement expressly gives respondents only one opportunity to select an arbitrator. After the panel had been convened, respondents were required by the agreement to respect the integrity of the panel until the final "conclusive and binding" award. The agreement did not give respondents the right to remove an arbitrator at will and replace him with a successor whenever respondents were dissatisfied with the arbitrator or the progress of the arbitration proceedings.

In accordance with its authority to compel compliance with an arbitration agreement and to appoint arbitrators where there is a lapse in filling a vacancy, the court had the prerogative to reappoint Lesher and Hastings to the panel. We therefore affirm the trial court's order granting the lessors' petition for order appointing arbitrators.

IV.

The final issue raised by respondents' appeal is whether the lower court erred in confirming the arbitration award. Respondents contend that the award should have been vacated because the arbitrators were guilty of misconduct and partial-

ity and the arbitrators exceeded their authority in deciding the valuation date, date of return, and other valuation considerations.

The party seeking to vacate an arbitration award must prove that one of the following grounds specified in HRS § 658-9 (1976) has been satisfied:

Vacating award. In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material, to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

Because of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to "the strictest possible limits" and an arbitration award cannot be vacated unless it falls within the scope of the statute. *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 319 (1969). *Accord, Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. at 488-89, 605 P.2d at 928-29; *Kim v. Mel Cummins Building Contractor, Inc.,* 57 Haw. 186, 188, 552 P.2d 1117, 1118 (1976); *Hayashi v. Chong,* 2 Haw. App. 411, 418, 634 P.2d 105, 109 (1981).

Respndents contend that the arbitrators' misconduct and partiality throughout the entire arbitration proceedings consti-

tuted grounds for vacating the award under HRS § 658-9 (2) and (3). The lower court considered and rejected respondents' numerous allegations of bias on the part of the arbitrators in its written findings of fact.

The court found that prior to the breakdown in arbitration proceedings in July 1980, each member of the panel acted "professionally, impartially, and without bias in performing their duties." Although Hastings had performed real estate appraisal services for respondents and Cowell had performed similar services for the petitioners, the parties had agreed in a letter dated February 25, 1980, that they would waive any objection to these previous relationships and that such relationships would not be grounds to invalidate the decision of the panel. During the original arbitration proceedings, Hastings and Cowell provided status reports to the respective parties which appointed them, but these reports were made with the full knowledge of the other members of the panel and was consistent with the accepted practice among real estate appraisers in this jurisdiction. Subsequent to the court's order compelling arbitration and reappointing the arbitrators to the panel, no further ex parte communications occurred between the members of the panel and the parties, on the advice of the parties' attorneys.

The court found that during the entire arbitration proceedings, the arbitrators never had any financial interest in the outcome of the decision; the arbitrators never identified with the interests, prejudices, and needs of either party; and the arbitrators never refused to hear testimony or refused to allow the presentation of evidence. The court concluded that at all times during the proceedings, the members of the arbitration panel acted in a fair and impartial manner.

Under HRCP Rule 52(a), the trial court's findings of fact will not be set aside on appeal unless "clearly erroneous." Furthermore, due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. The definitive test in determining that a finding of fact is clearly erroneous is when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been comitted." *Waugh v. University of Hawaii,* 63 Haw. 117, 132, 621 P.2d 957, 969

(1980); *Kim v. State,* 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980). *See also* 9 C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2587 (1971). After reviewing the record and giving due regard to the lower court's opportunity to judge the credibility of the witnesses, we cannot conclude that the court's findings with regard to the arbitrators' conduct were clearly erroneous.

As for respondents' claim that the arbitrators exceeded their authority with regard to the valuation date and other valuation matters, the court found that the valuation of the leased land, the prevailing rate of return and effective date of valuation were all matters within the scope of the panel's authority to determine the value of the leased premises under the 1953 lease. We also cannot conclude that these findings were clearly erroneous, especially since the arbitration panel is allowed great leeway in executing their duties under the arbitration agreement.

By voluntarily agreeing to arbitrate, the parties "thereby assumed all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. at 336, 460 P.2d at 319-20. Thus, even if the arbitrators had erred in their particular method of valuation, interpretation of "highest and best use" or consideration of comparable valuations of other properties, the court is powerless to vacate the award as long as the arbitrators' actions did not rise to the level of the grounds specified in HRS § 658-9(4).

The arbitration agreement expressly gave the panel the power to determine the "valuation of the land demised" as the basis of the rental value of the land. The panel was also given the authority to fix the rental value of the land "based upon the prevailing rate of return *at the time of such determination.*" (Emphasis added.) Given the clear language of the arbitration agreement, we cannot conclude that the arbitrators exceeded their authority under the arbitration agreement in making the valuation determinations at issue.

For all the foregoing reasons, we accordingly affirm the portion of the trial court's order entered on July 13, 1981 which confirmed the final award of the arbitration panel.

V.

The remaining issues to be addressed are those raised by petitioners' cross-appeal. Petitioners claim that in addition to the monetary judgment awarded by the court, they were entitled to reasonable attorneys' fees, pre-judgment interest at 6% per annum and post-judgment interest at the current rate of 10% per annum instead of the previous rate of 8% per annum. We agree with petitioners' position, and therefore reverse and remand for determination by the lower court of the appropriate additional costs to which petitioners are entitled.

A.

Petitioners' claim for attorneys' fees is based on the following clause in the lease:

That in the event of nonpayment of rent or breach of any of the covenants or conditions herein contained, on the part of the Lessees to be paid, observed and performed, the Lessees shall pay to the Lessor all costs and expenses of collecting said rent or enforcing said covenants and conditions, including a reasonable attorney's fee. . . .

Respondents' obligation to pay petitioners reasonable attorneys' fees is triggered when respondents either fail to pay rent or breach any covenants in the lease. Both triggering events were met here. Respondents breached their covenant to accept the appraisers' award as "conclusive and binding" by their actions in firing Hastings and delaying and frustrating the arbitration process. Respondents have also failed to pay the full rental payments established by the arbitration panel for the lease period beginning on January 1, 1980 and have breached their covenants to pay their rent in advance and without any deduction.

We have held that lessors under similar lease provisions are entitled to attorneys' fees reasonably incurred in protecting their interests. *See Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. at 490, 605 P.2d at 929; *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 621, 575 P.2d 869, 880 (1978). The petitioners here are likewise entitled to reasonable attorneys' fees as part of the expense of

collecting the rent due them and enforcing the covenants of the lease. We accordingly reverse the trial court's judgment which directed that each party bear its own legal expenses and costs and remand this case for determination by the lower court as to the amount of reasonable attorneys' fees petitioners should receive.

B.

Petitioners next claim pre-judgment interest under HRS § 478-1 (1976) which provides:

Legal rate; computation. When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of six per cent a year as follows:

(1) For money due on any bond, bill, promissory note, or other instrument of writing, or for money lent, after it becomes due;

(2) For money due on the settlement of accounts, from the day on which the balance is ascertained;

(3) For money received to the use of another, from the date of a demand made; and

(4) For money upon an open account, after sixty days from the date of the last item or transaction.[2]

In *Loyalty Development, supra,* we recently upheld the trial court's award of 6% pre-judgment interest on the unpaid rentals from the date the rents first became due, under HRS § 478-1(1). The court in *Waialua Agricultural Co., Ltd. v. Oahu Railway & Land Co., Ltd.,* 19 Haw. 446, 450 (1909), construing the statutory predecessor to HRS § 478-1, explained that the command of the statute that "interest shall be allowed . . . for all moneys after they become due on" any "instrument of writing" applied to rents which became due on a written lease. The court then awarded the lessors pre-judgment interest

---

[2] By amendment effective June 18, 1982, the pre-judgment interest rate of 6% was increased to 10% per annum. The amending act, however, states that the increased rates will not apply to any commitment entered into before the effective date of the act. Act 288, § 6, 1982 Haw. Sess. Laws 734, 738.

on the rentals due from the date of the accrual of the rent obligation, even though the exact amount of the rent due was not determined until subsequent litigation.

The rent due on the written lease here falls squarely within the scope of HRS § 478-1(1) as "money due on . . . [an] instrument of writing . . . after it becomes due." Petitioners are thus entitled to 6% per annum pre-judgment interest on the deficient lease rentals beginning on January 1, 1980, when the rental payments set by the arbitration award first became due.

C.

Petitioners' final claim for increased post-judgment interest arises from the amendment of HRS § 478-2 which raised post-judgment interest from 8% to 10% per year, effective April 16, 1981. HRS § 478-2 (Supp. 1982) currently provides as follows:

> On judgment. Interest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit.

There is no question that the increased rate of 10% per annum should have applied to the judgment entered on July 13, 1981. Through an oversight of petitioners' counsel, however, petitioners only requested post-judgment interest at the previous statutory level of 8% per annum.

A similar situation occurred in *Lucas v. Liggett & Myers Tobacco Co.,* 51 Haw. 346, 461 P.2d 140 (1969), where we granted plaintiff pre-judgment interest even though he had failed to request interest in his previous appeal or in proceedings in the court below. We noted that plaintiff should have filed a motion under HRCP Rule 60(b)(1) requesting the trial court for relief from his excusable neglect in failing to ask for interest.[3] But rather than prolonging the already protracted

---

[3] HRCP Rule 60(b)(1) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

litigation, we addressed the issue of pre-judgment interest ourselves and held that plaintiff was entitled to the interest claimed.

Petitioners' oversight in requesting post-judgment interest at the rate of 10% per annum constitutes excusable neglect under HRCP Rule 60(b)(1) because of the recent amendment to the statute of which petitioners' counsel was unaware. On remand, the trial court should award petitioners the increased post-judgment interest of 10% per annum to which they are entitled.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance herewith.

*Lloyd Y. Asato* (*Morio Omori* and *James E. T. Koshiba* with him on the briefs) for respondents-appellants, cross-appellees.

*Bert T. Kobayashi, Jr.* and *Robert T. Takamatsu* (*Kobayashi, Watanabe, Sugita and Kawashima,* of counsel) for petitioners-appellees, cross-appellants.