14 P.3d 1043

Sabino GEPAYA and Nenita Gepaya,
Petitioners–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO., a foreign corporation,
Respondent–Appellee.

No. 23219.

Supreme Court of Hawai'i.

Dec. 20, 2000.

Richard C. Monks, on the briefs, Honolulu, for petitioners-appellants.

Richard B. Miller, Honolulu, and David R. Harada–Stone (Tom & Petrus), on the briefs, Honolulu, for respondent-appellee.

LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.; and MOON, C.J., Dissenting.

Opinion of the Court by ACOBA, J.

We hold that the Circuit Court of the First Circuit (the court) committed plain error in a Hawai'i Revised Statutes (HRS) § 658–8 proceeding to confirm an arbitration award when it determined a legal question not decided by the arbitrators and modified the arbitration award accordingly. Unless the award was subject to review under the statutory grounds set forth in HRS § 658–9, or § 658–10, or either one of the two judicially recognized exceptions our appellate courts have adopted, the court was mandated to confirm the award according to its terms.

I.

On December 14, 1998, Petitioners-Appellants Sabino Gepaya (Sabino) and Nenita (Nenita) Gepaya (collectively, Petitioners) filed an application for appointment of arbi-

trators pursuant to HRS chapter 658 (1993).[1] The application alleged that Nenita and Sabino, her husband, were in their vehicle on January 1, 1998, when they were involved in a motor vehicle accident with a vehicle driven by an uninsured motorist. The application further alleged that Petitioners' insurer, Respondent-Appellee State Farm Mutual Automobile Insurance Co. (Respondent), had made personal injury protection benefit payments of $10,797.14 on behalf of Nenita and $10,647.39 on behalf of Sabino, that Petitioners had requested further compensation under the uninsured motorist coverage provision of their policy with Respondent, that Respondent had failed to make payment under such coverage, that their policy with Respondent provided for arbitration of the matter, and that the court should enforce their policy's arbitration clause.

On February 19, 1999, the court granted the application and ordered the selection of three arbitrators and the initiation of arbitration proceedings "according to the terms of the contract and based on [HRS c]hapter 658, 'Arbitration and Awards.'"

On January 11, 2000, Petitioners filed a motion to confirm the arbitration award dated October 4, 1999, and for entry of judgment thereon (the motion), pursuant to HRS § 658–8 (1993).[2] The memorandum attached to the motion related that pursuant to the February 19, 1999 court order, an arbitration

hearing was held on September 21, 1999 and an arbitration award was issued on October 4, 1999. In pertinent part, the award stated as follows:

Mrs. Gepaya

| | |
|---|---|
| Medical Special Damages | $10,258.62 |
| General Damages | $12,000.00 |

Mr. Gepaya

| | |
|---|---|
| Medical Special Damages | $ 9,556.26 |
| General Damages | $12,000.00 |
| | |
| Costs to Mr. & Mrs. Gepaya | $ 1,639.01 |

The possible application of HRS § 431:10C–301.5 covered loss deductible *is specifically not being addressed in this award.*

(Emphasis added.) The parties' instructions to the arbitrators, if any, are not a part of the record.

In the memorandum in support of the motion, Petitioners stated that Respondent sought to reduce the amount of the awards based on the "covered loss deductible" provision in HRS § 431:10C–301.5 (Supp.1997), which became effective on January 1, 1998. HRS § 431:10C–301.5 provides as follows:

**Covered loss deductible.** Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is

(Emphases added.)

---

1. Although the application should have, but did not designate the statutory section involved, it appears HRS § 658–3 applies. HRS § 658–3 states in pertinent part as follows:

    **Compelling compliance with agreement....** *A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed* in the manner provided for in the agreement. Five days' notice in writing of the application shall be served upon the party in default. Service thereof shall be made in the manner provided for service of a summons. The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, *the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.* If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.

2. HRS § 658–8 states in pertinent part, as follows:

    **Award; confirming award.** The award shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney. A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10....

entitled to recover damages, the judgment, settlement, *or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit.*

(Emphases added). Relying on *Sol v. AIG Hawai'i Ins. Co.,* 76 Hawai'i 304, 875 P.2d 921 (1994), Petitioners maintained that this statutory provision did not apply to additional insurance coverage obtained at Petitioners' option, such as uninsured motorist coverage. Petitioners noted that HRS § 431:10C–301.5 was amended on July 20, 1998 to read that "[t]he covered loss deductible shall not include benefits paid or incurred under any *optional additional coverage* [;]" thus, had the accident taken place after July 20, 1998, the question raised by Respondent would not arise. Petitioners then requested that the court "apply the reasoning of" *Sol,* "confirm" the award, and enter judgment "in the amounts stated in the arbitration award." Additionally, according to the memorandum, Petitioners and Respondent had apparently agreed that the costs awarded in arbitration would be paid in full by Respondent and the amount of the awards not in dispute, i.e., the "general damages" portions of the arbitration award, would be paid to Petitioners.

Subsequently, partial payment of the awards, as agreed, was purportedly made and in a November 2, 1999 pleading filed by Petitioners, they "acknowledg[ed] that they ha[d] received payment in partial satisfaction of the Arbitration award[ ]" from Respondent. This pleading stated, as to the unpaid balance of the award, that

> [t]he remaining amount is fairly an amount subject to dispute in good faith. Counsel for Petitioners … and said Petitioners, accept the dispute as to the remaining, as yet unpaid and unsatisfied portion [of the arbitration award], as a "good faith" dispute as to which *future clarification or legal decision or agreement will be required, to be initiated by either or both parties.*

(Emphasis added).

In its opposition memorandum, Respondent argued that Petitioners' motion to confirm should be denied "because the covered loss deductible statute in effect at the time of

the subject motor vehicle accident on January 1, 1998, namely HRS § 431:10C–301.5, allowed for a reduction [in the arbitration award], up to the maximum amount of $10,-000, in the amount of the arbitration award." Respondent maintained that, "(1) the statutory language of HRS § 431:10C–301.5, allowing a reduction for covered loss deductible, is plain and unambiguous and[,] thus, the court cannot alter its plain meaning under Hawaii law, and (2) the subsequent 1988[sic] amendment to HRS § 431:10C–301.5 has no retroactive operation under Hawaii law ."

On February 29, 2000, the court in effect adopted Respondent's position, granting the motion in part and denying it in part, and ordered confirmation of the arbitration award less the covered loss deductible claimed by Respondent:

> IT IS HEREBY ORDERED that the *Arbitration Award be confirmed* in favor of Petitioner NENITA GEPAYA *in the amount of $12,258.62, the amount already paid* based upon deduction from the Uninsured Motorist Arbitration Award of the amount representing the statutory covered loss deductible.
>
> IT IS HEREBY ORDERED that the *Arbitration Award be confirmed* in favor of Petitioner SABINO GEPAYA *in the amount of $12,000.00, the amount already paid* based upon deduction from the Uninsured Motorist Arbitration Award of the amount representing the statutory covered loss deductible.

(Emphases added.)

On March 2, 2000, Petitioners appealed. On appeal, the parties argue the question of whether a reduction in the amount of the covered loss deductible up to the statutory maximum as provided for in HRS § 431:10C–301.5 must be applied to the February 29, 2000 arbitration award. They do not address whether it was error for the court to render that decision in the HRS § 658–8 proceeding. Despite their failure to address this issue, we "may notice plain error not presented" and do so here. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(4); *Inlandboatmen's Union v. Sause Bros., Inc.,*

77 Hawai'i 187, 191, 881 P.2d 1255, 1259 (App.1994).

## II.

■ It is well established that this court has "confine[d] judicial review of [arbitration awards] to the strictest possible limits." *Mars Constructors, Inc. v. Tropical Enters.*, 51 Haw. 332, 335, 460 P.2d 317, 319 (1969). This is because "of the legislative policy ... encourag[ing] arbitration and thereby discourag[ing] litigation[.]" *Gadd v. Kelley*, 66 Haw. 431, 441, 667 P.2d 251, 258 (1983) (citing *Mars Constructors*, 51 Haw. at 336, 460 P.2d at 319). *See also Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 69, 919 P.2d 969, 981 (1996). Thus, "review of [arbitration] awards by the [circuit and appellate] courts [is] limited by the provisions of the arbitration statute." *Mars Constructors*, 51 Haw. at 335, 460 P.2d at 319. *See also Kalawaia v. AIG Hawai'i Ins. Co.*, 90 Hawai'i 167, 173, 977 P.2d 175, 181 (1999); *Arbitration of Bd. of Directors of Ass'n of Apartment Owners of Tropicana Manor*, 73 Haw. 201, 204, 830 P.2d 503, 507 (1992). In that regard, it is mandated by HRS § 658–8 that the circuit courts "shall grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10." *See Morrison–Knudsen Co. v. Makahuena*

*Corp.*, 66 Haw. 663, 672, 675 P.2d 760, 767 (1983) (stating that "HRS § 658–8 contemplates a judicial confirmation of the award issued by the arbitrator, 'unless the award is vacated, modified, or corrected' in accord with HRS §§ 658–9 and 658–10"). "HRS § 658–9 provides only four specific grounds upon which an award can be vacated, while HRS § 658–10 provides only three grounds for modifying or correcting an award." *Excelsior Lodge Number One v. Eyecor, Ltd.*, 74 Haw. 210, 219–20, 847 P.2d 652, 657 (1992) (footnotes omitted). Additionally, two judicially recognized exceptions to confirmation exist: one, to allow remand to the arbitrator to clarify an ambiguous award, *see Gozum v. American Int'l Adjustment Co.*, 72 Haw. 41, 44, 805 P.2d 445, 446 (1991); another, to allow vacation of an arbitration award clearly violative of public policy. *See Inlandboatmen's Union*, 77 Hawai'i at 193, 881 P.2d at 1261. There is nothing in the record implicating the provisions of HRS § 658–9.[3] Similarly, none of the three grounds for modifying or correcting an award are involved.[4] There is no ambiguity in the language of the award justifying remand to the arbitrators for clarification. *See Gozum*, 72 Haw. at 44–46, 805 P.2d at 446–47. Assuming *arguendo* the public policy exception to be an issue, the award is not "clearly" violative of public policy since the arbitrators did not decide the

**3.** HRS § 658–9 states:

> **Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
>
> (1) Where the award was procured by corruption, fraud, or undue means;
>
> (2) Where there was evident partiality or corruption in the arbitrators, or any of them;
>
> (3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.
>
> Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

With respect to HRS § 658–9(4), the record does not disclose what instructions the parties provided the arbitrators, assuming such instructions were transmitted, concerning the scope of the issues to be decided by the arbitrators.

**4.** HRS § 658–10 states:

> **Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
>
> (1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
>
> (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
>
> (3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

application of HRS § 431:10C–301.5. *Inland-boatmen's Union*, 77 Hawai'i at 194, 881 P.2d at 1262. Moreover, the parties purportedly agreed in the arbitration proceeding to defer their dispute over the unpaid award amount to "*future* clarification or legal decision, or agreement." In that context, a determination by the court or this court of any public policy issue raised by the award would rest on "speculation or assumption." *Id.*

■ In effect, the parties sought, in a HRS § 658–8 proceeding, the determination by the court of a legal question which was not decided by the arbitrators. *See Excelsior Lodge*, 74 Haw. 210, 847 P.2d 652. That is plainly not permissible in a proceeding to confirm an arbitration award. In this case, the arbitration award and the pleadings can be reasonably construed as reserving for the future the determination of the amount to be deducted, if any, from the damages awarded by the arbitrators. As it stands, the arbitration award merely quantifies the amount of damages incurred by Petitioners. Thus, while the award may be confirmed by the court, no obligation as to further payment, if any, can be enforced before the resolution of the question reserved.[5]

■ An arbitration award is subject to vacation only on the four specific grounds set forth in HRS § 658–9, *See id.* at 219–20, 847 P.2d at 657, or for a clear violation of public policy, *See Inlandboatmen's Union*, 77 Hawai'i at 193, 881 P.2d at 1261; to modification or correction only under the three grounds listed by HRS § 658–10, *See Excelsior Lodge*, 74 Haw. at 219–20, 847 P.2d at 657; or to remand to the arbitrators for clarification of a patent ambiguity. *See Gozum*, 72 Haw. at 44–46, 805 P.2d at 446–47. None of the foregoing grounds apply to this case. If the motion brought by the moving party does not come within one of the foregoing specific grounds, the circuit court is "powerless to [vacate,] modify[,] or correct [an] award" and has "no alternative but to confirm the award

and to enter a judgment accordingly." *Mars Constructors*, 51 Haw. at 336, 460 P.2d at 319. Therefore, the court was required to confirm the award by the arbitrators subject, as the parties had agreed, to "future" determination of the covered loss deductible issue.

## III.

For the foregoing reasons, the court's February 29, 2000 order is vacated, and the case is remanded to the court with instructions to enter an order reflecting confirmation of the amounts awarded and reservation of the question of any deductions, and the resulting enforceability of further payment, if any, to Petitioners, for future determination as the parties had agreed.

Dissenting Opinion by MOON, C.J.

In vacating the circuit court's decision in this case, the majority not only elevates form over substance, but does so utilizing "plain error," which, in my view, is inappropriate under the circumstances of this case. I, therefore, respectfully dissent.

I agree with the majority that the circuit court, in a confirmation hearing pursuant to HRS § 658–8, must confirm an arbitration award unless one party moves to vacate, modify, or correct the award pursuant to HRS §§ 658–9, 658–10, or one of the limited "judicially recognized exceptions" to these statutes. I disagree, however, with the majority's holding that, in order to obtain a ruling on the applicability of HRS § 431:10C–301.5 (Supp.1997) [hereinafter, the covered loss deductible statute], the Gepayas were required to initiate a second, separate proceeding. In this regard, I believe the majority elevates form over substance. Neither party has challenged the alleged procedural defect in this case, and, in my view, there is none. Moreover, the arbitrators explicitly stated in the arbitration award that "[t]he possible application of HRS

---

5. We do not "perceive[ ] the circuit court's actions in this case as attacking the merits of the award," as the dissent claims. Dissenting opinion at 367, 14 P.3d at 1048. All we are saying here is that the course chosen by the court and the parties and suggested by the dissent would have resulted in an alteration or modification of

the award. Since the arbitration award simply represented the amounts the petitioners would receive and since the deductibility issue "[was] specifically not being addressed in this award," the court could not decide the deductibility issue in the proceeding to confirm the award.

§ 431:10C–301.5 covered loss deductible is specifically not being addressed in this award," and the parties implicitly agreed to submit the deductibility issue to the court hearing the motion to confirm the arbitration award.

The majority's conclusion requiring a separate proceeding is apparently motivated by its desire to protect the important public policy against judicial interference with arbitration awards. Although I agree with the importance of protecting the aforementioned public policy, I also believe that, under the specific circumstances of this case, the circuit court's determination of the applicability of the covered loss deductible statute does not constitute judicial interference with an arbitration award.

Technically, either the Gepayas or State Farm could have filed a declaratory judgment action (seeking a ruling on whether the covered loss deductible statute applied to the arbitration award) separate from the proceeding that sought confirmation of the award itself. However, there is nothing in our rules that would prevent the parties from seeking a ruling on the covered loss deductible issue in the *same* proceeding as the one seeking confirmation of the award.

As separate actions, one of two procedural courses would likely have occurred. On the one hand, both actions could have been consolidated, and the circuit court could have decided both issues of confirmation of the award as well as whether the deductible applied. On the other hand, the court, at the confirmation hearing, could have confirmed the amount awarded by the arbitrators and entered judgment in favor of the Gepayas, explicitly reserving payment of the judgment pending resolution of the declaratory judgment action. Either way, the result would be the same: the Gepayas would be entitled to have the arbitration award confirmed, and, if the covered loss deductible statute was determined to apply, State Farm would be entitled to set off the deductible amount against the award. As a consolidated action or as separate actions, the circuit court had the authority to decide both issues regarding confirmation of the arbitration award and the

applicability of the covered loss deductible statute.

In this case, however, the parties sought judicial determination of the legal question in a single proceeding. Admittedly, the papers filed by the Gepayas sought confirmation of the arbitration award and did not specifically include, for example, a "motion for declaratory judgment that the covered loss deductible statute did not apply." However, it is well-established that it is the *substance* of the pleading that controls, not the *form*. *Island Holidays, Inc. v. Fitzgerald*, 58 Haw. 552, 567, 574 P.2d 884, 893 (1978) (stating that "pleadings must be construed liberally and not technically"); *Madden v. Madden*, 43 Haw. 148, 149–50 (stating that "the substance of the pleading controls, not the nomenclature given to the pleading"). Substantively, the documents filed by both parties demonstrate that the parties desired a ruling from the circuit court regarding the covered loss deductibility issue. Attached to the Gepayas' motion to confirm the award were, *inter alia:* (1) the arbitration award, which, as previously stated, explicitly excluded a determination on the applicability of the covered loss deductible statute to the award; (2) a signed contract between State Farm and the Gepayas in which the Gepayas accepted partial payment of the "undisputed portion" of the arbitration award in return for acknowledging that "the remaining disputed amount [is] a " 'good faith' dispute as to which clarification or legal decision or agreement will be required, to be initiated by either or both parties"; and (3) the accompanying memorandum of law focusing exclusively on the very subject of the dispute referred to above—whether the covered loss deductible statute applied to the award. State Farm's reply to the Gepayas' motion also dealt exclusively with whether the covered loss deductible statute applied. Read as a whole, these documents clearly indicate that both parties sought resolution of the covered loss deductibility issue, and the court approved the procedure by hearing and ruling on the matter. In my view, a separate proceeding should not be required to determine a reserved legal question by the circuit court in a confirmation hearing of an arbitration award where the merits of the award itself was not being

attacked and especially where, as here, the parties and the court agreed that the issue be heard.

The primary cases cited by the majority support the proposition that the merits or "substance" of the award is what is immune from judicial review. *See* Majority Opinion (maj.op.) at 365, 14 P.3d at 1046 (citing, *inter alia, Mars Constructors, Inc. v. Tropical Enters.*, 51 Haw. 332, 334, 460 P.2d 317, 318 (1969) (affirming arbitration award even though the arbitrators "may have erred in the determination of fact and ... the application of the law" in determining the award)(internal quotations omitted); *Gadd v. Kelley*, 66 Haw. 431, 443, 667 P.2d 251, 259 (1983) (rejecting a contention that arbitrators exceeded their authority in valuation of land, prevailing rate of return on the land and the effective valuation dates); *Kalawaia v. AIG Hawai'i Ins. Co.*, 90 Hawai'i 167, 173, 977 P.2d 175, 181 (1999) (rejecting circuit court's award of prejudgement interest because the arbitration award itself encompassed any applicable prejudgement interest)). The majority apparently perceives the circuit court's actions in this case as attacking the merits of the award. The deductibility issue, however, does *not* implicate the merits of the award itself because the amount of the award was explicitly determined without consideration of extraneous factors such as the covered loss deductible statute. If, for example, the circuit court had increased or reduced the amount of the award because it felt that the arbitrators incorrectly determined the extent of injuries to the Gepayas, *that action* would be an attack on the merits of the arbitration award. However, where the application of the circuit court's ruling regarding the deductibility issue results in a reduction or set-off against the award, as was the case here, such action is not an attack immune from judicial review. The policy of judicial noninterference with arbitration awards is not undermined by the circuit court's decision that the covered loss deductible applied—an issue that the arbitrators acknowledged was not within the scope of their authority and that the circuit court had authority to decide upon request by the parties outside of arbitration.

Although neither of the parties have challenged the circuit court's authority in deciding the legal question, the majority, relying on *Inlandboatmen's Union v. Sause Bros., Inc.*, 77 Hawai'i 187, 191, 881 P.2d 1255, 1259 (App.1994), notes that "we may notice plain error not presented[.]" Maj. op. 365–66, 14 P.3d at 1045–46 (internal quotations omitted). *Inlandboatmen's Union,* however, also states that "[t]he court shall take notice of a plain error *when it is necessary to prevent a miscarriage of justice." Id.* at 191, 881 P.2d at 1260 (internal citations omitted) (emphasis added). Here, no "miscarriage of justice" occurred where the parties received exactly the dispute resolution they sought from a court empowered to resolve their dispute. In fact, a far greater miscarriage of justice would occur by forcing the parties to go back and re-brief, re-argue, and possibly re-appeal an issue that has already been fully briefed, argued, decided in the circuit court, and is now ripe for review on appeal. The majority's holding today would not only result in a waste of judicial resources, but would increase the burden on the parties in terms of attorneys' fees and costs. In short, the majority's use of plain error to vacate the circuit court's decision in this case is not only inappropriate but counterproductive.

Because the circuit court had the authority to confirm the arbitration award and decide the legal question not considered by the arbitrators, I would address the merits of the issues properly before us and determine the outcome of the case accordingly.