80 P.3d 321

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Plaintiff–Appellee,**

v.

**Sabino GEPAYA and Nenita Gepaya, Defendants–Appellants.**

No. 24514.

Supreme Court of Hawai'i.

Nov. 25, 2003.

Richard C. Monks, on the briefs, for Defendants–Appellants Sabino Gepaya and Nenita Gepaya.

Richard B. Miller and Mark K. Morita, on the briefs, Honolulu, for Plaintiff–Appellee State Farm Mutual Automobile Insurance Company.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Defendants-appellants Sabino Gepaya and Nenita Gepaya (the Gepayas) appeal from the judgment of the Circuit Court of the First Circuit[1] in favor of plaintiff-appellee State Farm Mutual Automobile Insurance Co. (State Farm), declaring that the "covered loss deductible" provision of Hawaii Revised Statutes (HRS) § 431:10C–301.5 (Supp.

1. The Honorable Sabrina S. McKenna presided over this matter.

1997)[2] applies to the recovery of damages for bodily injury under the Uninsured Motorist (UM) coverage provision of their motor vehicle insurance policy contract with State Farm.

The Gepayas argue that the circuit court erred in granting judgment in favor of State Farm on the bases that: (1) HRS § 431:10C–301.5 is ambiguous, and a 1998 amendment to the statute demonstrates legislative intent that the covered loss deductible not apply to recovery of bodily injury damages under optional insurance benefits such as UM coverage; (2) this court in previous cases enunciated the principle that it is improper for insurance carriers to deduct no-fault benefits paid from a recovery of bodily injury damages under UM coverage, based on legislative intent; (3) the Gepayas' motor vehicle insurance policy contract with State Farm does not provide for application of the covered loss deductible; and (4) the record was insufficient to support the granting of summary judgment.

State Farm, on the other hand, argues that: (1) HRS § 431:10C–301.5 is not ambiguous, and clearly states that the covered loss deductible applies to any recovery of bodily injury damages, including damages recovered under UM coverage; (2) the 1998 amendment to HRS § 431:10C–301.5 did not exempt recoveries of bodily injury damages under UM coverage from the application of the covered loss deductible, but was intended to exempt optional benefits paid for wage loss and alternative care from the calculation of the amount of the covered loss deductible; (3) even if the 1998 amendment to HRS § 431:10C–301.5 was construed to exempt the recovery of bodily injury damages under UM coverage from the application of the

covered loss deductible, the new provision should not be given retroactive application; and (4) the circuit court properly found the issues in this declaratory relief action to be ripe for adjudication.

The application of the covered loss deductible provision of HRS § 431:10C–301.5 to the recovery of bodily injury damages under UM coverage raises a question of first impression for this court. For the reasons discussed *infra*, we hold that the covered loss deductible provision of HRS § 431:10C–301.5 applies to the Gepayas' recovery of bodily injury damages under their UM coverage with State Farm.

## I. BACKGROUND

### A. Factual Background

On January 1, 1998, two significant events occurred which resulted in the dispute presently before us: (1) the Gepayas were injured in a motor vehicle collision with an uninsured motorist; and (2) HRS § 431:10C–301.5 (Supp.1997) became effective. This statute provided:

> **Covered loss deductible.** (a) Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. . . .

At the time of the collision with the uninsured motorist, the Gepayas had a motor vehicle insurance policy contract with State Farm. In addition to having the statutory mandated coverages of bodily injury liability, property damage liability, and personal inju-

---

2. HRS § 431:10C–301.5 (Supp.1997) provided in relevant part:

> **Covered loss deductible.** (a) Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. . . .

As discussed *infra*, this section was amended in 1998 and now reads:

> **Covered loss deductible.** Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. *The covered loss deductible shall not include benefits paid or incurred under any optional additional coverage.*

HRS § 431:10C–301.5 (Supp.2002) (underscored emphasis added).

ry protection (PIP) benefits, the Gepayas purchased UM coverage, which provided coverage for damages arising out of bodily injuries caused by an uninsured motorist.

· As a result of the injuries the Gepayas received in the January 1, 1998 collision with the uninsured motorist, State Farm paid PIP medical benefits on the Gepayas' behalf. *Gepaya v. State Farm Mut. Auto. Ins. Co.*, 94 Hawai'i 362, 362–63, 14 P.3d 1043, 1043–44 (2000) [hereinafter *"Gepaya I "*]. When the Gepayas claimed damages under their UM coverage and could not resolve ·the claims with State Farm, the claims proceeded to arbitration before a three-member arbitration panel in accordance with the terms of the insurance contract. Following a hearing held on September 21, 1999, an arbitration award was issued on October 4, 1999. *Gepaya I*, 94 Hawai'i at 363, 14 P.3d at 1044. The arbitrators awarded damages to the Gepayas as follows:

*Mrs. Gepaya*

| | |
|---|---|
| Medical Special Damages | $10,258.62 |
| General Damages | $12,000.00 |

*Mr. Gepaya*

| | |
|---|---|
| Medical Special Damages | $ 9,556.26 |
| General Damages | $12,000.00 |

Based upon the parties' agreement prior to the arbitration hearing to reserve the issue of the applicability of HRS § 431:10C–301.5 to the UM award of damages for future legal decision or agreement, the arbitrators expressly declined to address this issue in their award: "The possible application of HRS § 431:10C–301.5 covered loss deductible is specifically not being addressed in this award."

B. *Procedural Background*

The Gepayas filed a motion in the circuit court to confirm the arbitration award on January 11, 2000. In their motion, the Gepayas also asked the court to declare that their arbitration award was not subject to the covered loss deductible under HRS § 431:10C–301.5. The Gepayas acknowledged that their UM award had been partially satisfied by State Farm, and that the unpaid balance represented the amounts in dispute concerning the applicability of the covered loss deductible.

The circuit court ruled that HRS § 431:10C–301.5 applied to the UM award, and confirmed the award as reduced by the covered loss deductible as applicable to each claimant.

On appeal, this court vacated the arbitration confirmation order, holding that the circuit court committed plain error in determining a legal question not determined by the arbitrators, *i.e.*, the applicability of HRS § 431:10C–301.5 to the UM award, and in reducing the award after finding that the statute was applicable. *Gepaya I*, 94 Hawai'i at 362, 14 P.3d at 1043. This court remanded the case to the circuit court with instructions to enter a confirmation order in the amounts awarded by the arbitrators and leave the issue of applicability of HRS § 431:10C–301.5 for further determination. *Id.* at 366, 14 P.3d at 1047.

Following remand, State Farm filed a separate declaratory judgment action (this present case) to resolve the issue of whether HRS § 431:10C–301.5 properly applies to the Gepayas' UM award. The Gepayas' answer admitted the basic facts alleged: (1) that they were insureds under a certain insurance policy contract; (2) that they were injured by an uninsured motorist; (3) that they received PIP benefits from State Farm as a result of the injuries caused by the uninsured motorist; and (4) that State Farm paid the undisputed amounts owing under the arbitration award. The Gepayas also admitted that a justiciable controversy existed between the parties as to the applicability of HRS § 431:10C–301.5.

State Farm moved for summary judgment, incorporating the facts adopted by this court in the prior appeal and the facts admitted in the Gepayas' answer. In opposition, the Gepayas argued that the insurance contract in question could have precluded the application of HRS § 431:10C–301.5, but the Gepayas did not offer any evidence of the contract or its provisions. In its reply memorandum, State Farm introduced a copy of the Gepayas' insurance contract; the contract did not contain a provision that would restrict application of the covered loss deductible. The

Gepayas did not submit any evidence to the contrary and did not request additional time to obtain such evidence pursuant to Rule 56(f) of the Hawaii Rules of Civil Procedure.

The circuit court granted State Farm's motion for summary judgment on August 3, 2001. Judgment was entered in favor of State Farm and against the Gepayas on August 28, 2001. Notice of appeal from the judgment was timely filed by the Gepayas on August 28, 2001.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

▊ We review the circuit court's interpretation of a statute *de novo*. *State v. Pacheco*, 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> . . . .

*Id.* at 94–95, 26 P.3d at 583–84. . . .

*Troyer v. Adams*, 102 Hawai'i 399, 409, 77 P.3d 83, 93 (2003) (quoting *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002)).

### B. Summary Judgment

▊ We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu*, 98 Hawai'i at 244–45, 47 P.3d at 359–60 (alterations in original).

## III. DISCUSSION

### A. Uninsured Motorist Coverage

▊ Uninsured Motorist (UM) Coverage is an optional insurance coverage intended to protect persons who are legally entitled to recover damages for bodily injury or death from the owners or operators of uninsured motor vehicles. HRS § 431:10C–301(b)(3) (1993). This court has previously discussed the purpose of UM statutes such as HRS § 431:10C–301(b)(3):

> Their purpose is to provide a remedy where injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause. This recourse [ ] is provided, then, to cover the situation of a wrongful or tortious act of an uninsured motorist or a hit and run driver, or that of another unknown motorist.
>
> *. . . Ideally, the purpose is to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance . . . .*

8C Appleman § 5067.45, at 41–46 (1981) (footnotes omitted).

*Dawes v. First Ins. Co. of Hawaii Ltd.*, 77 Hawai'i 117, 122–23, 883 P.2d 38, 44 (1994) (footnote omitted) (emphasis added).

Consistent with the intent to place UM claimants in the same position they would have occupied had the tortfeasor carried lia-

bility insurance, HRS § 431:10C–306 (1993 & Supp.2002) ("Abolition of tort liability") requires that a UM claimant meet the same statutory requirements as a third-party tort plaintiff under this statute:

> (d) No claim may be made for benefits under the uninsured motorist coverage by an injured person against an insurer who has paid or is liable to pay motor vehicle insurance benefits to the injured person unless the claim meets the requirements of this article.

HRS § 431:10C–306(d) (Supp.2002).[3]

■ Based upon the plain language of this statute, including the statutory mandate that UM claimants may not make a UM claim unless they meet the requirements of HRS § 431:10C–306 for filing a third-party tort action, it is clear that UM claimants are intended to be in the same position they would have occupied had the tortfeasor carried liability insurance.

### B. Legislative History of HRS § 431:10C–301.5 (Covered Loss Deductible)

HRS § 431:10C–301.5, enacted in 1997 (effective January 1, 1998), is part of the Hawai'i motor vehicle insurance law. See 1997 Haw. Sess. L. Act 251, § 2 at 515. The language of the statute is clear and unambiguous:

> Whenever a person effects a recovery of damages for bodily injury, whether by suit, arbitration or settlement, the recoverable damages are reduced by $5,000 or the amount of personal injury benefits in-

curred, whatever is greater, up to the maximum limit.[4]

HRS § 431:10C–301.5 (Supp.1997). Indeed, the statute's lack of ambiguity is both confirmed and explained by a review of its statutory history within the context of the Hawai'i motor vehicle insurance law. This history shows that HRS § 431:10C–301.5 was part of a "full scale change[ ] to fix the [motor vehicle insurance] system" designed to "yield a significant reduction in premiums, control litigation, and provide adequate medical coverage without a cost shift to businesses and employees." Sen. Conf. Comm. Rep. No. 932, in 1997 Senate Journal, at 1255. Rate reduction in premiums was intended for UM coverage and Underinsured Motorist (UIM) coverage as well as for the mandatory basic coverages. 1997 House Journal, at 262.

The wholesale nature of the changes in the motor vehicle insurance law system was summarized by one of the Senate sponsors of the "reform" bill (H.B.100) who testified as follows:

> We addressed the cost drivers in the system and have enacted specific measures to control these costs. One of the things that Mr. Simons [the state actuary] noted in his analysis was that claims padding has been the single major cost driver under the current systems. Claims have been padded by extra, unnecessary treatments in order for claimants to reach the medical rehabilitative threshold—the monetary threshold—in order to sue. We have repealed the monetary threshold. He also noted that C.D. 1 adequately addresses

---

**3.** At the time of the Gepayas' motor vehicle accident, HRS § 431:10C–306(d) was virtually identical in substance and provided:

> No claim may be made for benefits under the uninsured motorist coverage by an injured person against an insurer who has paid or is liable to pay [personal injury protection] benefits to such injured person unless such claim meets the requirements of subsection (b).

(Alterations in original.) Subsection (b) provided:

> Tort liability is not abolished as to the following persons, their personal representatives, or their legal guardians in the following circumstances:
>
> (1) Death occurs to such person in such a motor vehicle accident;
> (2) Injury occurs to such person which consists, in whole or in part, in a significant

permanent loss of use of a part or function of the body;

> (3) Injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering; or
> (4) Injury occurs to such person in a motor vehicle accident and as a result of such injury that the personal injury protection benefits incurred by such person equal or exceed $5,000.

HRS § 431:10C–306 (Supp.1997).

**4.** The "maximum limit" of personal injury protection benefits is $10,000 per person. HRS 431:10C–103.5(c) (Supp.1997).

that cost driver. He also noted that we have addressed the misuse of chiropractic and alternative care providers, which were a factor in padding claims so that individuals could get up to the $13,900 and then get into the tort system. By narrowing personal injury protection benefits to those of prepaid health, eliminating the ability to pad claims, repealing the monetary threshold, and requiring a covered loss deductible from tort awards, we have, in fact, addressed the major cost drivers in the system.

*We've made many of the costly mandatory coverages required under our current law optional.* This is pro consumer and produces savings. It now puts the consumer in the driver's seat to select the kind of automobile coverage the consumer needs. It's not mandated by the state that we carry all of these coverages if in fact we do not need them. *Wage loss, death benefits, alternative care providers are examples of coverage that is now optional.*

1997 Senate Journal, at 798 (comments of Senator Baker) (emphases in second paragraph added).

The covered loss deductible provision in this overall reform measure was described as follows:

We've enacted a covered loss deductible concept whereby all tort recoveries are reduced by a minimum of $5,000 or a maximum of a person's personal injury protection coverage up to the max of $10,000, whichever is greater. This novel approach is designed to discourage frivolous law suits and yet at the same time set a reasonable standard for litigation on legitimate claims.

*Id.*

The practical operation of the covered loss deductible was explained by State Actuary Martin Simons in a letter dated April 28, 1997 read by Representative Menor and introduced into the House Journal:

SUBJECT: Clarification of "covered loss deductible"

The covered loss deductible works in the following manner:

1) In cases where the damages associated with an automobile accident are less than $5,000, the claimant is precluded from suing the negligent party in an automobile accident. This is necessary in order to keep the small claims out of litigation.

2) In cases where the claimant has incurred medical expenses of between $5,000 and $10,000, the result of the litigation will have subtracted from the award the amount of medical expenses incurred. *This precludes the claimant from receiving funds for medical expenses for which is covered [sic] under his own policy.* The deductible is an improvement over the current monetary threshold since it is deducted, and the litigation will not be viewed as a money making venture as it currently is under a threshold that is completely paid to the claimant once it is pierced.

Example: A claimant with $7,200 of medical expenses that are covered by the PIP portion of an automobile insurance policy, who is successful in court and receives an award of $9,000 (including $7,200 for his medical expenses and $1,800 in pain and suffering) will receive only $1,800.

3) In cases where the claimant has incurred medical expenses of $10,000 or more, any award obtained through any means of litigation will be reduced by $10,000.

1997 House Journal, at 999 (emphasis added).

State Actuary Simons further explained why the covered loss deductible would save money over the monetary threshold:

There are several reasons why the covered loss deductible will save money over the current monetary threshold:

1) Due to the limitations imposed on chiropractic care, this coverage can no longer be used to reach the deductible. This has been a major cost driver under the monetary threshold.

2) Due to their exclusion from the mandated coverages, loss of wages cannot be used to reach or to offset the deductible as they can today under a monetary threshold.

3) Once the deductible is reached (at whatever level according to the items in the first part of this memo) the amount of the deductible is still deducted from any award unlike under the monetary threshold where, once reached, the amount of the threshold is collectible by the prevailing party in the litigation.

*Id.* at 1000.

In summary, the legislative history shows that the 1997 legislature determined that it would address the motor vehicle insurance system's "cost drivers" of excessive medical care and of small claims by: (1) reducing the tort threshold; (2) converting costly mandatory coverages for wage loss, death benefits, and alternative care benefits to optional coverages; and (3) reducing recoveries for bodily injury damages by a covered loss deductible.

The specific role of HRS § 431:10C–301.5 in this context was to preclude a claimant from receiving a "double recovery" for medical expenses which had been paid under the PIP coverage by reducing a recovery of damages for bodily injury by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit ($10,000).

C. *1998 Amendment of HRS § 431:10C–301.5*

■ Effective July 20, 1998, HRS § 431:10C–301.5 was amended by adding the following sentence: "The covered loss deductible shall not include benefits paid or incurred under any optional additional coverage." The new statute, still in effect today, thus provides:

> **Covered loss deductible.** Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. *The covered loss deductible shall not include benefits paid or incurred under any optional insurance coverage.*

HRS § 431:10C–301.5 (Supp.2002) (underscored emphasis added).

The Gepayas contend that the additional language shows that the original 1997 enactment of HRS § 431:10C–301.5 was ambiguous as to whether the covered loss deductible should be applied to UM recovery of damages for bodily injury, and that the 1998 amendment demonstrated a legislative intent that the covered loss deductible not be applied to UM recovery of damages for bodily injury.

State Farm, on the other hand, contends that the original enactment of HRS § 431:10C–301.5 was not ambiguous, and clearly states that the covered loss deductible applies to recovery of damages for bodily injury under UM. State Farm argues that the 1998 amendment was intended to exempt optional benefits (*i.e.*, wage loss, death benefits, alternative care benefits) from the calculation of the amount of the covered loss deductible to be applied to the recovery of damages for bodily injury.

A review of the legislative history of the 1998 amendment reveals that HRS § 431:10C–301.5 was amended as one of a number of amendments to Act 251, the 1997 motor vehicle insurance law reform bill. The Senate explained the purpose of the 1998 legislation:

> The purpose of this bill is to continue the reforms enacted in Act 251, Session Laws of Hawai'i 1997. In the years prior to passage of Act 251, Hawai'i's consumers paid the highest auto insurance premiums in the nation in some years and the second highest in other years. Since the passage of Act 251, Hawai'i's consumers have already realized significant savings. Preliminary data indicates that this favorable downward trend will continue.
>
> Your Committee on Conference is committed to continuing the trend of decreasing automobile insurance rates for our driving public, and to that end, *has focused on clarifying existing provisions and making technical corrections to Act 251.* Amendments to strengthen the provisions of Act 251 and effectuate its purpose of creating a fair and equitable system that

delivers maximum benefits with the greatest efficiency and lowest cost are included.

Sen. Conf. Comm. Rep. No. 117, in 1998 Senate Journal, at 793 (emphasis added).

The amendment which pertains to HRS § 431:10C–301.5 is described as follows:

> The calculation of allowable expenses for tort threshold purposes is clarified and the threshold requirements for uninsured motorist benefits are conformed to the requirements for liability insurance benefits.

*Id. See also* Hse. Stand. Comm. Rep. No. 709–98, in 1998 House Journal, at 1318 (noting that the 1998 amendment "clarif[ies] the calculation of personal injury benefits for threshold purposes").

In addition to amending HRS § 431:10C–301.5 as above-described, the 1998 amendments to the motor vehicle insurance law also added a provision to HRS § 431:10C–306 (Abolition of tort liability) to specify that optional additional coverage benefits shall not count toward meeting the minimum tort threshold amount of $5,000:

> **§ 431:10C–306  Abolition of tort liability.** (a) Except as provided in subsection (b), this article abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:
>
> . . . .
>
> (b) Tort liability is not abolished as to the following persons . . . in the following circumstances:
>
> . . . .
>
> (4) Injury occurs to the person in a motor vehicle accident and as a result of such injury that the personal injury protection benefits incurred by such

person equal or exceed $5,000; provided that in calculating this amount:

> (A) The following shall be included:
>
> (i) Personal injury protection benefits . . . .
>
> (B) *When a person has optional coverage, benefits received in excess of the maximum basic personal injury protection limits set forth in section 431:10C–103.5 shall not be included.*

HRS § 431:10C–306 (Supp.1998) (underscored emphasis added).

State Farm contends that the two amendments should be read and construed together as laws *in pari materia* and that these two amendments taken together present a balanced and consistent treatment of benefits received under optional coverage. Optional coverages are not counted in determining whether the $5,000 tort or claim threshold has been met, nor are they counted in determining the amount of the covered loss deductible to be deducted from the recovery of damages for bodily injury.

We agree with State Farm: the 1998 amendment to HRS § 431:10C–301.5 was a clarifying provision intended to exempt optional benefits from the calculation of the amount of the covered loss deductible to be applied to the recovery of damages for bodily injury.

While we noted *supra* that UM coverage is an optional coverage, we believe that the 1998 legislature intended that the exclusion of "optional additional coverage" in HRS § 431:10C–301.5 apply to those optional coverages specifically listed in HRS § 431:10C–302 (Supp.2002) ("Required optional additional insurance"),[5] the statutory section immedi-

---

5. HRS § 431:10C–302 provides in relevant part:

> **Required optional additional insurance.** (a) In addition to the motor vehicle insurance coverages described in section 431:10C–301, every insurer issuing a motor vehicle insurance policy shall make available to the insured the following optional insurance under the following conditions. Every insurer issuing a commercial motor vehicle insurance policy shall make available to the insured the following optional insurance, except for those benefits under paragraphs (4), (5), (9), (10), and (11) under the following conditions:

> (1) At the option of the insured, provisions covering loss resulting from damage to the insured's motor vehicle with such deductibles, including but not limited to collision and comprehensive deductibles of $50, $100, $250, $500, $1,000, $1,500, and $2,000, at appropriately reduced premium rates, as the commissioner, by rule, shall provide;
>
> (2) At the option of the insured, compensation to the insured, the insured's spouse, any dependents, or any occupants of the insured's vehicle for damages not cov-

ered by personal injury protection benefits;

(3) Additional coverages and benefits with respect to any injury or any other loss from motor vehicle accidents or from operation of a motor vehicle for which the insurer may provide for aggregate limits with respect to such additional coverage so long as the basic liability coverages provided are not less than those required by section 431:10C–301(b)(1) and (2);

(4) At the option of the insured, an option in writing for coverage for wage loss benefits for monthly earnings loss for injury arising out of a motor vehicle accident. Any change in the wage loss benefits coverage selected by an insured shall apply only to benefits arising out of motor vehicle accidents occurring after the date the change becomes effective. Coverage shall be offered in multiples of $500 a month/$3,000 per accident per person, from $500 a month/$3,000 per accident to $2,000 a month/$12,000 per accident; however, nothing shall prevent an insurer from making available higher limits of coverage;

(5) An option in writing for minimum coverage for death benefits for death arising out of a motor vehicle accident in an amount of $25,000, to be paid to the surviving spouse, for the benefit of the spouse and dependent children, or if there are no surviving spouse or dependent children, then to the estate. Coverage shall also be made available for increased death benefits in increments of $25,000 up to $100,000; however, nothing shall prevent an insurer from making available higher limits of coverage. At the option of the insured, coverage for funeral expenses of $2,000 shall be made available;

(6) Terms, conditions, exclusions, and deductible clauses, coverages, and benefits which:

  (A) Are consistent with the required provisions of the policy,

  (B) Limit the variety of coverage available so as to give buyers of insurance reasonable opportunity to compare the cost of insuring with various insurers; and

  (C) Are approved by the commissioner as fair and equitable;

(7) At appropriately reduced premium rates, deductibles applicable only to claims of an insured in the amounts of $100, $300, $500, and $1,000 from all personal injury protection benefits otherwise payable; provided that if two or more insureds to whom the deductible is applicable under the contract of insurance are injured in the same accident, the aggregate amount of the deductible applicable to all of them shall not exceed the specified deductible, which amount where necessary shall be allocated equally among them;

(8) Every insurer shall fully disclose the availability of all required and optional coverages and deductibles, including the nature and amounts, at the issuance or delivery of the policy; or, for a policy already issued on January 1, 1998, disclosure shall be made at the first renewal after January 1, 1998. The insurer shall also disclose at issuance or renewal, as applicable, the effect on premium rates and savings of each option and deductible. Further offers or disclosures thereafter shall be required to be included with every other renewal or replacement policy. All elections of coverages, options, and deductibles by a named insured shall be binding upon additional insureds covered under the named insured's policy. The purpose of this paragraph is to inform insureds or prospective insureds of the coverages under this article;

(9)   (A) An insurer may make available, and provide at the option of the named insured, the benefits described in section 431:10C–103.5(a) through managed care providers such as a health maintenance organization or a preferred provider organization. The option may include conditions and limitations to coverage, including deductibles and coinsurance requirements, as approved by the commissioner. The commissioner shall approve those conditions and limitations which are substantially comparable to or exceed the coverage provided under section 431:10C–103.6;

  (B) An insurer may make available, and provide at the option of the named insured, deductible and coinsurance arrangements whereby the recipient of care, treatment, services, products, expenses, or accommodations shares in the payment obligation;

  (C) No deductible or coinsurance under a policy covered under section 431:10C–302(a)(9)(A) or (B) shall be applied with respect to care, treatment, services, products, or accommodation provided or expenses incurred by an insured during the first twenty-four hours in which emergency treatment has been provided or until the insured patient's emergency medical condition is stabilized, whichever is longer;

  (D)   (i) The optional coverage prescribed in section 431:10C–302(a)(9)(A) and (B) shall apply only to the named insured, resident spouse, or resident relative; and

  (ii) "Resident relative" means a person who, at the time of the accident, is

ately following HRS § 431:10C–301.5. The legislature did not include UM benefits in its listing of required optional additional insurance in HRS § 431:10C–302. Given that this court reads statutory provisions in context, *State v. Prevo*, 44 Haw. 665, 673–74, 361 P.2d 1044, 1049–50 (1961), we believe that it is clear that the legislature did not intend to include UM benefits when referring to "optional additional coverage" in HRS § 431:10C–301.5.

### D. *Applicability of HRS § 431:10C–301.5 to the Gepayas' UM recovery of damages for bodily injury*

The Gepayas do not dispute that their UM award constitutes a recovery of damages for bodily injury. Based upon the nature and purpose of UM coverage, as well as the language and legislative history of HRS § 431:10C–301.5 and its 1998 amendment, we hold·that HRS § 431:10C–301.5, both as originally enacted and as amended in 1998, is applicable to the recovery of damages for bodily injury under UM coverage. As discussed *supra*, the purpose of UM coverage is to place UM claimants in the same position they would have occupied had the tortfeasor carried liability insurance. Consistent with this purpose, UM claimants must satisfy the same statutory threshold requirements as a

third-party tort plaintiff. It would be inconsistent with the purpose of UM coverage to hold that HRS § 431:10C–301.5 does not apply to UM recovery of damages for bodily injury. It would also lead to inconsistent and arbitrary results for two identical accident victims, who receive identical injuries in identical accidents, based simply upon the fortuity of whether their tortfeasor was insured or uninsured. The victim whose tortfeasor was insured would have his/her recovery reduced by the covered loss deductible, whereas the victim whose tortfeasor was uninsured would not have the same recovery reduced. There is nothing in the language of HRS § 431:10C–301.5 or its legislative history that would suggest that such a dichotomy was intended by the legislature. Rather, the language and legislative history of HRS § 431:10C–301.5 supports its application to both tort and UM recovery of damages for bodily injury.

As noted *supra*, a number of statutes, including HRS § 431:10C–301.5, were enacted by the legislature as measures intended to reduce the motor vehicle insurance system's "cost drivers" of excessive medical care and small claims. One of the cost drivers identified by the legislature was the "double recovery" of medical expenses. The specific role

> related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if living elsewhere;
>
> (E) An agreement made under section 431:10C–302(a)(9) must be a voluntary agreement between the insured and the insurer, and no insurer shall require an insured to agree to those policy provisions as a condition of providing insurance coverage. Requiring an agreement as a precondition to the provision of insurance shall constitute an unfair insurance practice and shall be subject to the provisions, remedies, and penalties provided in article 13; and
>
> (F) An insurer providing the coverages authorized in section 431:10C–302(a)(9)(A) and (B) shall demonstrate in rate filings submitted to the commissioner the savings to the insured to be realized under the plan;

> (10) An insurer shall make available optional coverage for naturopathic, acupuncture, nonmedical remedial care, and treatment rendered in accordance with the teachings, faith, or belief of any group which relies upon spiritual means through prayer for healing; and
>
> (11) An insurer may make available optional coverage for chiropractic treatment in addition to chiropractic treatment provided under §§ 431:10C–103.6 for not more than the lesser of the following:
>
> (A) Thirty additional visits at no more than $75 a visit; or
>
> (B) Treatment as defined by the Hawai'i Chiropractic Association guidelines in effect on January 25, 1997.
>
> The commissioner shall adopt rules, including policy limits, terms, and conditions as necessary to implement the requirements of this section.
>
> (b) In accordance with the rules adopted by the commissioner, a policy of insurance described in this section shall contain a provision specifying the periods within which claims may be filed and action may be brought against the insurer.

of HRS § 431:10C–301.5 was to preclude a claimant from receiving a double recovery for medical expenses which had been paid under the PIP coverage by reducing a recovery of damages for bodily injury by $5,000 or the amount of PIP benefits incurred, whichever is greater, up to the maximum limit ($10,000).

In holding that HRS § 431:10C–301.5 is applicable to recovery of damages for bodily injury under UM coverage, we distinguish our earlier holding in *Sol v. AIG Hawai'i Ins. Co.*, 76 Hawai'i 304, 875 P.2d 921 (1994). In *Sol*, this court held invalid a contractual provision providing that an insurer could reduce the amount of UM benefits paid by the amount of no-fault benefits paid. *Id.* at 305, 875 P.2d at 922. However, *Sol* is inapposite to the instant case: *Sol* involved a contractual set-off, whereas the instant case involves a statutory reduction of recoverable damages. While *Sol* was a proper statement of the public policy expressed by the legislature when it enacted the original motor vehicle insurance law in 1977, it does not provide a basis for overriding the clear language of HRS § 431:10C–301.5 enacted in 1997 and amended in 1998. The 1997 legislature determined that there was a compelling need to reduce the cost of basic no-fault coverage; the legislature therefore identified what it believed to be "cost drivers" and enacted statutes intended to reduce the cost drivers. As discussed *supra*, HRS § 431:10C–301.5 was enacted to reduce one of the cost drivers by precluding a claimant from receiving a "double recovery" for medical expenses that had already been paid under the claimant's PIP coverage. Such policy determinations are expressly within the constitutional purview of the legislature. *See Lee v. Corregedore*, 83 Hawai'i 154, 171, 925 P.2d 324, 341 (1996) (noting that broad public policy determinations are "best left to the branch of government vested with the authority and fact-finding ability to make such broad public policy decisions, namely the Hawai'i legislature").

Finally, we disagree with the Gepayas' argument that the status of the record was insufficient to support granting summary judgment to State Farm. First, there is no genuine issue as to any material fact. Second, this is a declaratory judgment action concerning the applicability of a statute, and HRS § 431:10C–301.5 is a self-executing statute which does not require proof of an enabling provision in the insurance contract between the parties. As we explained in *Bowers v. Alamo Rent–A–Car, Inc.*, 88 Hawai'i 274, 281, 965 P.2d 1274, 1281 (1998), "[s]tate insurance laws become incorporated into existing contracts at the time of enactment" (citing Holmes's Appleman on Insurance, 2d §§ 9.1 at 477 (1996) ("The statutory law in force and effect at the time of the issuance of a policy becomes a part of the contract as though expressly written therein and a policy must be considered to contain those requirements.")). As a result, the Gepayas' contention that their contract did not provide for application of the covered loss deductible is without merit; the issue of statutory interpretation was ripe for summary adjudication on the record presented to the circuit court.

## IV. CONCLUSION

Based on the foregoing, we affirm the judgment of the first circuit court, filed on August 28, 2001, in favor of State Farm and against the Gepayas, declaring that the covered loss deductible provision of HRS § 431:10C–301.5 applies to the Gepayas' recovery of bodily injury damages under the UM coverage provision of their motor vehicle insurance policy contract with State Farm.