Il Nam KIM, Yung Ye Lee, Husband and Wife, Plaintiffs–Appellees,

v.

Daniel T. REILLY, Jr., Defendant–Appellant,

and

Khai Hoang Nguyen, Jane Does 1–10, John Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Doe Non–Profit Entities 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 24995.

Supreme Court of Hawai'i.

June 14, 2004.

Reconsideration Denied July 28, 2004.

---

Amanda J. Weston (of the Law Offices of Paul K. Hoshino), on the briefs, for defendant-appellant.

Richard T. Pafundi, Honolulu, on the briefs, for plaintiffs-appellants.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

**94**

Opinion of the Court by MOON, C.J.

Defendant-appellant Daniel T. Reilly appeals from the February 14, 2002 order of the Circuit Court of the First Circuit, the Honorable Richard W. Pollack presiding, granting plaintiffs-appellees Il Nam Kim's and Yung Ye Lee's (collectively, the plaintiffs) motion to enforce judgments and/or for writ of execution [hereinafter, motion to enforce]. On appeal, Reilly contends that the circuit court erred in granting the plaintiffs' motion to enforce their respective judgments because the court refused to apply the covered loss deductible statute, Hawai'i Revised Statutes (HRS) § 431:10C 301.5 (Supp.1998),[1] to reduce the amount of each award.

As discussed more fully *infra* in section III, we affirm the circuit court's order granting the plaintiffs' motion to enforce.

## I. BACKGROUND

On May 11, 1999, near the intersection of Lunalilo and Pi'ikoi streets, Reilly caused an automobile accident, in which the plaintiffs'

vehicle was struck. On February 2, 2000, the plaintiffs filed a complaint against Reilly and others. The case was subsequently submitted to the Court Annexed Arbitration Program (the Program), pursuant to HRS § 601–20 (1993).[2] On June 22, 2001, separate arbitration awards were filed in favor of Kim and Lee and against Reilly in the amounts of $13,500.00 and $12,500.00, respectively.[3] Inasmuch as none of the parties filed a notice of appeal and request for trial *de novo* pursuant to Hawai'i Arbitration Rules (HAR) Rule 21 (1995),[4] the clerk of the circuit court entered the arbitration awards as two separate final judgments on July 20, 2001.

Instead of paying the full awards of $13,500 and $12,500, Reilly deducted $10,000 from each award and paid only $3,500.00 to Kim and $2,500.00 to Lee. Reilly reduced the awards pursuant to the covered loss deductible statute, which provides that arbitration awards "shall be reduced by $5,000 or the amount of personal injury protection benefits incurred . . . up to the maximum limit [ ($10,-

---

1. HRS § 431:10C–301.5 provides:

    **Covered loss deductible.** Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. The covered loss deductible shall not include benefits paid or incurred under any optional additional coverage.

    The maximum limit of personal injury protection benefits is $10,000 per person. *State Farm Mut. Auto. Ins. Co. v. Gepaya*, 103 Hawai'i 142, 146 n. 4, 80 P.3d 321, 325 n. 4 (2003) [hereinafter, *Gepaya* ] (citing HRS § 431:10C–103.5(c) (Supp. 1997)).

2. HRS § 601–20 provides:

    **Court annexed arbitration program.** (a) There is established within the judiciary a court annexed arbitration program which shall be a mandatory and nonbinding arbitration program to provide for a procedure to obtain prompt and equitable resolution of certain civil actions in tort through arbitration. . . .

    (b) All civil actions in tort, having a probable jury award value, not reduced by the issue of liability, exclusive of interest and costs, of $150,000 or less, shall be submitted to the program and be subject to determination of arbitrability and to arbitration under the rules governing the program. . . .

3. Specifically, as against Reilly, Kim was awarded $4,500 in special damages and $9,000 in general damages, whereas Lee was awarded $5,000 in special damages and $7,500 in general damages. Although Kim and Lee were awarded only $4,500 and $5,000 in special damages, respectively, the plaintiffs "establish[ed] evidence that the PIP benefits paid for both plaintiffs were $10,000[.]" Based on that evidence, Reilly reduced the awards by $10,000 pursuant to the covered loss deductible statute. However, we express no opinion as to whether the covered loss deductions should have amounted to $10,000 in the instant case.

4. HAR Rule 21 provides:

    **Judgment on Award.**

    If, after twenty (20) days after the award is served upon the parties, no party has filed a written Notice of Appeal and Request for Trial *De Novo*, the clerk of the court shall, upon notification by the Arbitration Administrator, enter the arbitration award as a final judgment of the court. This period may be extended by written stipulation, filed within twenty (20) days after service of the award upon the parties, to a period no more than forty (40) days after the award is served upon the parties. Said award shall have the same force and effect as a final judgment of the court in the civil action, but may not be appealed.

000) ]." The plaintiffs disputed the deductions and, therefore, refused to execute a full satisfaction of the judgments.

On December 11, 2001, the plaintiffs moved to enforce the final judgments in full and/or for writ of execution. The plaintiffs, *inter alia*, challenged the constitutionality of the covered loss deductible statute by arguing that it (1) "unconstitutionally revokes and rescinds the collateral source doctrine," (2) authorizes an unlawful taking of the plaintiffs' personal property, and (3) impairs the plaintiffs' right to a jury trial.

In his memorandum in opposition to the plaintiffs' motion to enforce, Reilly argued, *inter alia*, that the covered loss deductible statute is not unconstitutional because it (1) "does not amount to a deprivation or unlawful taking under the State of Hawaii's Constitution[,]" (2) "does not violate the equal protection clause[,]" (3) "does not violate the due process clause[,]" and (4) "does not interfere with the plaintiff's [sic] right to a jury trial[.]"

On February 14, 2002, after a hearing on the matter, the circuit court entered an order granting the plaintiffs' motion to enforce. The court reasoned that "[i]t is well-settled that judgments entered in a court of competent jurisdiction are presumptively valid[ ]" and that, because Reilly did not contest the validity of the judgments in an arbitration or court proceeding, "the arbitration awards reduced to final judgments entered on July 20, 2001 are valid and enforceable." Further, the circuit court noted that "an arbitration award which has become a final judgment pursuant to HAR Rule 21 'may not be vacated or modified by the circuit court' and 'is not subject to circuit court review under Hawai'i Rules of Civil Procedure Rule 59 and/or Rule 60.' " Thus, the circuit court ruled that it was "expressly prohibited from modifying, altering or reexamining the final arbitration judgments entered on July 20, 2001." Accordingly, pursuant to its "power to make and award such judgments and issue such executions necessary to carry into full effect the powers which are given to [it] by law[,]" the court granted the plaintiffs' motion.

On March 15, 2002, Reilly filed a notice of appeal.

## II. *STANDARD OF REVIEW*

"The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo*. Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Labrador v. Liberty Mut. Group*, 103 Hawai'i 206, 211, 81 P.3d 386, 391 (2003) (citations, internal quotation marks, and brackets omitted).

## III. *DISCUSSION*

Reilly appeals from the circuit court's order granting the plaintiffs' motion to enforce. Reilly essentially argues that the circuit court erred in enforcing the judgments in favor of the plaintiffs *in full* because the covered loss deductible statute mandates that arbitration awards "shall be reduced" by a certain amount. Although Reilly acknowledges that an arbitration award which has become a final judgment pursuant to HAR Rule 21 may not be vacated or modified by the circuit court, Reilly asserts that "the covered loss deductible statute does not require any modification, re-examination or alteration by the trial court." Furthermore, Reilly argues that the circuit court's refusal to apply the covered loss deductible statute in the instant case "undermines [the] intention of [arbitration for] providing a quick resolution by apparently requiring defendants to bring separate motions prior to an arbitration award becoming final."

In response, the plaintiffs contend that "the judgments are final and cannot be modified[ ]" because Reilly did not (1) appeal from the arbitrator's award and request a trial *de novo*, or (2) contest the validity of the judgments in an arbitration or court proceeding. They further assert that, inasmuch as "[a]n arbitration award which has become a final judgment pursuant to HAR Rule 21 may not be vacated or modified by the circuit court[,]" the circuit court in this case was precluded from reducing the awards by the covered loss deduction.

The Court Annexed Arbitration Program, to which the instant case was submitted, is a mandatory, non-binding arbitration program for certain civil cases. HAR Rule 1 (1986). The Program provides a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters, and the arbitration hearings are intended to be informal, expeditious and consistent with the purposes of the HAR. HAR Rules 2(A) & (C) (1997). "After a case is submitted or ordered to the Program, and before a Notice of Appeal and Request for Trial *De Novo* is filed, or until the case is removed from the Program, these [arbitration] rules apply." HAR Rule 7(C) (1995). Inasmuch as the instant case was submitted to the Program, but was never removed therefrom, the HAR apply to this case.

Pursuant to HAR Rule 21, if a party does not file a written notice of appeal and request for trial *de novo* within twenty days after the arbitration award is served upon the parties, "the clerk of the court shall ... enter the arbitration award as a final judgment of the court." In the instant case, the arbitration awards were entered as final judgments in their full amounts because none of the parties challenged the awards or filed a notice of appeal and request for trial *de novo*. It was only after the plaintiffs moved to enforce the judgments that Reilly attempted to reduce the awards based on the covered loss deductible statute.

Pursuant to the "clear and unambiguous" language of the covered loss deductible statute, *Gepaya*, 103 Hawai'i at 146, 80 P.3d at 325; *see also supra* note 1, the arbitration awards in the instant case were subject to a covered loss deduction. Therefore, had Reilly either raised the statute's application during the arbitration proceedings or applied to the arbitration administrator or arbitration judge to reduce the awards by the covered loss deduction, the awards could have been reduced by the appropriate amount prior to the awards being entered as final judgments. *See* HAR Rule 20(B) & (C) (1987) (explaining that the arbitration administrator is authorized to modify arbitration awards "in a matter of form rather than substance" whereas the arbitration judge is authorized

to make "[a]ny modification of substance"). Furthermore, Reilly could have appealed from the awards and requested a trial *de novo* if he was "dissatisfied with [the] arbitration award[s.]" *Darcy v. Lolohea*, 77 Hawai'i 422, 427, 886 P.2d 759, 764 (App. 1994), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994); HAR Rule 22 (1996). However, in the instant case, Reilly failed to (1) raise the covered loss deductible statute during the arbitration proceedings, (2) apply to the arbitration administrator or the arbitration judge to reduce the awards, or (3) file a notice of appeal and request for trial *de novo*. As such, pursuant to HAR Rule 21, the arbitration awards were entered as unappealable final judgments, which the circuit court was precluded from modifying or vacating. *See Darcy*, 77 Hawai'i at 424, 886 P.2d at 761 ("We hold that an arbitration award which has become a final judgment pursuant to HAR Rule 21, may not be vacated or modified by the circuit court, or appealed to an appellate court[.]").

■■■ Moreover, by failing to challenge the arbitration awards until the plaintiffs moved to enforce the judgments, Reilly impermissibly sought to collaterally attack the judgments. A collateral attack "is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989) (citing *Kapi'olani Estate, Ltd. v. Atcherly*, 14 Haw. 651, 661 (1903)) (quotation marks omitted). As a general rule, "[i]f it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack." *Id.* (citations, brackets, and internal quotation marks omitted).

In the instant case, Reilly challenged the judgments in response to the plaintiffs' motion to enforce. Because a proceeding to enforce a judgment is collateral to the judgment, any challenge to the judgment raised therein constitutes a collateral attack. *See Kapi'olani Estate, Ltd.*, 14 Haw. at 660–61; *see also Barbachano v. Allen*, 192 F.2d 836, 840 (9th Cir.1951) ("It seems clear to us that it was not open to appellees thus to make a

collateral attack upon the judgment here sought to be enforced[.]"); *Royal Int'l Optical Co. v. Tex. State Optical Co.*, 92 N.M. 237, 586 P.2d 318, 322 (N.M.Ct.App.), *cert. denied*, 92 N.M. 260, 586 P.2d 1089 (1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2860, 61 L.Ed.2d 297 (1979) ("A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding."); *Gabbert v. Bd. of Review for Okla. Employment Sec. Comm'n*, 943 P.2d 158, 160 (Okla. Ct.App.1997) (noting that, in execution of judgment proceedings, "[a] party may defend against the execution, but not by attacking the judgment[ ]"); *Clements v. Holmes*, 22 Tenn.App. 230, 120 S.W.2d 988, 991 (1938) ("A direct attack upon the validity of a decree or judgment cannot be made in the defendant's answer to a bill filed for the purpose of enforcing the decree."); *Hume v. Ricketts*, 69 Wyo. 222, 240 P.2d 881, 883 (1952) (noting that "[a] proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding"). Therefore, because (1) Reilly challenged the judgments in response to the plaintiffs' motion to enforce and (2) Reilly's contention was based on non-jurisdictional grounds, Reilly's attack on the judgments was collateral and improper. Accordingly, the circuit court did not err in granting the plaintiffs' motion to enforce the final judgments.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's order granting the plaintiffs' motion to enforce judgments and/or for writ of execution filed on February 14, 2002.