107 P.3d 440

**Bernardo GONZALES, Plaintiff–Appellant,**

v.

**DAI–TOKYO ROYAL STATE INSURANCE COMPANY, LIMITED; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Non–Profit" Corporations 1–10; and Roe Governmental Entities 1–10, Defendants–Appellees.**

No. 25667.

Supreme Court of Hawai'i.

March 7, 2005.

Erlinda Dominguez and Ronald N. Federizo, on the briefs, for plaintiff-appellant Bernardo Gonzales.

Richard B. Miller and Mark K. Morita (of Tom Petrus & Miller), Honolulu, on the briefs, for defendant-appellee Dai–Tokyo Royal State Insurance Company, Ltd.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff-appellant Bernardo Gonzales appeals from the February 14, 2003 judgment

of the first circuit court, the Honorable Richard Pollack presiding, in favor of defendant-appellee Dai–Tokyo Royal State Insurance Company (DTRIC). Gonzales presents two principal arguments: first, he argues that the "covered loss deductible" (CLD) provision of Hawai'i Revised Statutes (HRS) § 431:10C–301.5 (Supp.2000)[1] does not apply to the recovery of damages for bodily injury under the Underinsured Motorist (UIM) coverage provision of Gonzales's motor vehicle insurance policy contract with DTRIC; second, he argues that HRS § 431:10C–301.5 is unconstitutional.[2] We disagree with Gonzales and hold that HRS § 431:10C–301.5 is constitutional and applies to UIM coverage.

### I. The CLD Applies To UIM Coverage

In *State Farm Mut. Auto. Ins. Co. v. Gepaya*, 103 Hawai'i 142, 80 P.3d 321 (2003), this court held that the CLD applies to the recovery of Uninsured Motorist (UM) benefits:

> Based upon the nature and purpose of UM coverage, as well as the language and legislative history of HRS § 431:10C–301.5 and its 1998 amendment, we hold that HRS § 431:10C–301.5, both as originally enacted and as amended in 1998, is applicable to the recovery of damages for bodily injury under UM coverage.

*Id.* at 151, 80 P.3d at 330. For purposes of the applicability of the CLD statute, there is no distinction between UM benefits and UIM benefits; on the contrary, there are three reasons justifying the extension of *Gepaya* to UIM cases. First, HRS § 431:10C–301 (1993 & Supp.2000), entitled "Required motor vehicle policy coverage," requires an insurer to offer both UM and UIM coverage under virtually identical terms:

> (b) A motor vehicle insurance policy shall include:
>
> . . . .
>
> (3) With respect to any motor vehicle registered or principally garaged in this State, liability coverage provided therein or supplemental thereto, in limits for bodily injury or death set forth in paragraph (1), under provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom; provided that the coverage required under this paragraph shall not be applicable where any named insured in the policy shall reject the coverage in writing; and
>
> (4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles. *An insurer may offer the underinsured motorist coverage required by this paragraph in the same manner as uninsured motorist coverage;* provided that the offer of

---

1. At the time of the automobile collision that gave rise to the instant case, HRS § 431:10C–301.5, entitled "Covered loss deductible," provided:

   > Whenever a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit. The covered loss deductible shall not include benefits paid or incurred under any optional additional coverage.

   HRS § 431:10C–301.5 (Supp.2000). This statute has since been amended; the statute in its current form is identical except that the last line reads as follows: "The covered loss deductible shall not include benefits paid or incurred under

any optional additional coverage *or benefits paid under any public assistance program.*" HRS § 431:10C–301.5 (Supp.2004) (emphasis added). This amendment is not relevant to our analysis in *State Farm Mut. Auto. Ins. Co. v. Gepaya*, 103 Hawai'i 142, 80 P.3d 321 (2003), or the instant case.

2. Gonzales presents two additional arguments as well. First, he argues that the CLD was applied twice in this case (*i.e.*, that his UIM benefits were reduced by $20,000, not $10,000); this argument is without merit. Second, he argues that the circuit court improperly relied on an unpublished circuit court order in granting summary judgment in favor of DTRIC; this argument is also without merit inasmuch as the circuit court merely incorporated its own reasoning on the same issue in a prior case it had decided.

both shall [be conspicuously displayed, · identify the premiums, and provide for written rejection of the coverage].

(Emphases added.) This statute demonstrates that the legislature thought of UM and UIM coverages as counterparts, having similar purposes and deserving similar treatment.

Second, our statutory analysis in *Gepaya* applies equally to UM coverage and UIM coverage. HRS § 431:10C–301.5 provides that "[t]he covered loss deductible shall not include benefits paid or incurred under any optional additional coverage." In *Gepaya*, we held that "optional additional coverage" did not refer to UM benefits; we based this holding on the fact that HRS § 431:10C–302 (1993 & Supp.2000) (entitled "Required optional additional insurance"), the statutory section immediately following HRS § 431:10C–301.5, did not mention UM coverage in setting forth the various types of "optional additional coverage." Therefore, we stated: "Given that this court reads statutory provisions in context, *State v. Prevo*, 44 Haw. 665, 673–74, 361 P.2d 1044, 1049–50 (1961), we believe that it is clear that the legislature did not intend to include UM benefits when referring to 'optional additional coverage' in HRS § 431:10C–301.5." *Gepaya*, 103 Hawai'i at 151, 80 P.3d at 330. UIM coverage, like UM coverage, is also not mentioned in HRS § 431:10C–302. Consequently, we believe that the legislature did not intend to include UIM benefits when referring to "optional additional coverage" in HRS § 431:10C–301.5.

Third, neither UM nor UIM coverage is intended to provide a claimant with a double recovery. As this court explained in *Gepaya*:

> Uninsured Motorist (UM) Coverage is an optional insurance coverage intended to protect persons who are legally entitled to recover damages for bodily injury or death from the owners or operators of uninsured motor vehicles. HRS § 431:10C–301(b)(3) (1993). This court has previously discussed the purpose of UM statutes such as HRS § 431:10C–301(b)(3):
>
> > Their purpose is to provide a remedy where injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause. This recourse [ ] is provided, then, to cover the situation of a wrongful or tortious act of an uninsured motorist or a hit and run driver, or that of another unknown motorist.... *Ideally, the purpose is to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance ....*
> >
> > 8C Appleman § 5067.45, at 41–46 (1981) (footnotes omitted).
>
> *Dawes v. First Ins. Co. of Hawai'i Ltd.*, 77 Hawai'i 117, 122–23, 883 P.2d 38, 44 (1994) (footnote omitted) (emphasis added).

*Gepaya*, 103 Hawai'i at 145, 80 P.3d at 324 (alterations in original). This discussion of UM coverage applies equally to UIM coverage. *See Kang v. State Farm Mut. Auto. Ins. Co.*, 72 Haw. 251, 255, 815 P.2d 1020, 1022 (1991) ("When the [UIM] statute was recodified in 1988, both the House and Senate agreed that '[u]nder this bill, [UIM] coverage would be treated in the same manner that [UM] coverage is presently treated, i.e. as a means of protection, through voluntary insurance, for persons who are injured by motorists whose liability policies are inadequate to pay for personal injuries.'" (Quoting Hse. Conf. Comm. Rep. No. 126–88, in 1988 House Journal, at 826; Sen. Conf. Comm. Rep. No. 215, in 1988 Senate Journal, at 675.) (Some alterations in original and some added.)); 24 *Appleman on Insurance 2d* § 147.1, at 10 (2004) ("UM/UIM statutes are designed to allow insureds the same recovery they would have obtained if the tortfeasor had been insured.").

Therefore, although the legislature considers UM and UIM benefits to be separate coverages (*i.e.*, a consumer could purchase UM coverage without purchasing UIM coverage and vice versa), there is no meaningful distinction between UM and UIM benefits with regard to the applicability of the CLD. As a result, we extend *Gepaya* to UIM coverage cases.

## II. *HRS § 431:10C–301.5 Is Constitutional*

Gonzales argues that he has a constitutional right to be fully compensated for his injuries by the tortfeasor; he contends that HRS § 431:10C–301.5 deprives him of this right and thereby violates the fourteenth amendment to the United States Constitution[3] and article I, section 5 of the Hawai'i Constitution.[4]

Gonzales's argument is without merit. As we stated in *Gepaya*, "HRS § 431:10C–301.5 was enacted to reduce one of the cost drivers [of the motor vehicle insurance system] by precluding a claimant from receiving a 'double recovery' for medical expenses that had already been paid under the claimant's PIP coverage. Such policy determinations are expressly within the constitutional purview of the legislature." *Gepaya*, 103 Hawai'i at 152, 80 P.3d at 331. In other words, applying the CLD to Gonzales's recovery of UIM benefits did not violate Gonzales's right to substantive due process.

## III. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's February 14, 2003 final judgment.

---

3. The fourteenth amendment to the United States Constitution provides in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"

4. Article I, section 5 of the Hawai'i Constitution provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"